IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

BERKLEY ASSURANCE COMPANY,

          Plaintiff/Counterclaim Defendant,

v.

CBG BUILDING COMPANY, LLC,

          Defendant/Counterclaim Plaintiff.

**Civil Action No. 1:22-cv-01213**

**DEFENDANT CBG BUILDING COMPANY, LLC's ANSWER AND AMENDED
COUNTERCLAIM TO COMPLAINT FOR DECLARATORY JUDGMENT**

Defendant CBG Building Company, LLC ("CBG"), by and through its undersigned

counsel, respectfully submits this Answer and Amended Counterclaim to the Complaint for

Declaratory Judgment filed by Berkley Assurance Company ("Berkley") in this matter.

**ANSWER TO BERKLEY'S COMPLAINT**

**Parties**

1.     CBG lacks sufficient information to admit or deny the allegations in Paragraph 1.

2.     Admitted that CBG is a limited liability company organized under the laws of

Virginia.  Denied as to the location of CBG's principal place of business.  As of October 2022,

CBG maintains its principal place of business at 4401 North Fairfax Drive, Suite 800, Arlington,

VA 22203.

3.      Denied.  According to Virginia Secretary of State filings, the individuals identified in Paragraph 3 are not members of CBG, they are managers.  CBG's sole member is Construction Capital LLC, which is organized under the laws of Delaware.

4.      Admitted that CBG is a named insured on an insurance policy issued by Berkley.  Denied that the policy was issued to CBG's parent company, CV Services Group LLC.  The policy was issued to CBG's parent company, CV Services Group LP ("CV").  Denied that CV is organized under the laws of Virginia.  It is organized under the laws of Delaware.  Admitted that CV maintains its principal place of business at the same address in Arlington as CBG.

## Jurisdiction and Venue

5.      Admitted that the Complaint purports to set forth a claim for declaratory relief.  The remainder of Paragraph 5 contains legal conclusions to which no response is required.  To the extent a response is required, all such allegations are denied.

6.      Whether jurisdiction is proper is a legal conclusion to which no response is required.

7.      Whether jurisdiction is proper is a legal conclusion to which no response is required.

8.      Whether venue is proper is a legal conclusion to which no response is required.

## Factual Background

### *The Policy*

9.      Admitted.

10.     Admitted.

2

11.     The Policy speaks for itself, and therefore no response is required.  To the extent Paragraph 11 alleges anything inconsistent with, or that mischaracterizes, the contents of the Policy, all such allegations are denied.

12.     The Policy speaks for itself, and therefore no response is required.  To the extent Paragraph 12 alleges anything inconsistent with, or that mischaracterizes, the contents of the Policy, all such allegations are denied.

13.     The Policy speaks for itself, and therefore no response is required.  To the extent Paragraph 13 alleges anything inconsistent with, or that mischaracterizes, the contents of the Policy, all such allegations are denied.

14.     The Policy speaks for itself, and therefore no response is required.  To the extent Paragraph 14 alleges anything inconsistent with, or that mischaracterizes, the contents of the Policy, all such allegations are denied.

15.     The Policy speaks for itself, and therefore no response is required.  To the extent Paragraph 15 alleges anything inconsistent with, or that mischaracterizes, the contents of the Policy, all such allegations are denied.

16.     The Policy speaks for itself, and therefore no response is required.  To the extent Paragraph 16 alleges anything inconsistent with, or that mischaracterizes, the contents of the Policy, all such allegations are denied.

17.     The Policy speaks for itself, and therefore no response is required.  To the extent Paragraph 17 alleges anything inconsistent with, or that mischaracterizes, the contents of the Policy, all such allegations are denied.

18.     The Policy speaks for itself, and therefore no response is required.  To the extent Paragraph 18 alleges anything inconsistent with, or that mischaracterizes, the contents of the Policy, all such allegations are denied.

19.     The Policy speaks for itself, and therefore no response is required.  To the extent Paragraph 19 alleges anything inconsistent with, or that mischaracterizes, the contents of the Policy, all such allegations are denied.

### *The Project*

20.     Admitted that CBG and High Properties, LP ("HP") executed a contract in September 2019 (the "Contract").  The Contract speaks for itself, but to the extent Paragraph 20 alleges anything inconsistent with, or that mischaracterizes, the contents of the Contract, all such allegations are denied.  Admitted that the Mallard Pointe development in Charlotte, North Carolina (the "Project") consists of three buildings.  As to the remainder of the second sentence of Paragraph 20, denied.  The Project contains a total of 260 residential units.

21.     As to the first sentence of Paragraph 21, denied.  As to when each building was "closed in" – a term that the Complaint does not define – CBG lacks sufficient information to admit or deny the remaining allegations of Paragraph 21 and demands strict proof thereof.

22.     Admitted that HP and CBG discussed the growth of mold at the Project.  CBG denies any characterization of discussions between HP and CBG.

23.     Whether HP asserted a Pollution Claim within the meaning of the Policy no later than March 16, 2021, is a legal conclusion to which no response is required.  To the extent a response is required, all such allegations are denied.  Admitted that HP sent CBG a letter dated March 16, 2021.  The letter speaks for itself, but to the extent Paragraph 23 alleges anything

4

inconsistent with, or that mischaracterizes, the contents of the letter, all such allegations are denied.

24. Whether HP asserted a Pollution Claim within the meaning of the Policy and whether CBG complied with the reporting provisions of the Policy are legal conclusions to which no response is required. To the extent a response is required, all such allegations are denied.

25. Admitted that HP sent an email to CBG on April 9, 2021. The email speaks for itself, but to the extent Paragraph 25 alleges anything inconsistent with, or that mischaracterizes, the contents of the email, all such allegations are denied. CBG denies all remaining allegations in this paragraph.

26. Admitted that CBG responded to HP's April 9, 2021, email. CBG's response speaks for itself, but to the extent Paragraph 26 alleges anything inconsistent with, or that mischaracterizes, the contents of CBG's response, all such allegations are denied.

27. Whether HP asserted a Pollution Claim within the meaning of the Policy and whether CBG complied with the reporting provisions of the Policy are legal conclusions to which no response is required. To the extent a response is required, all such allegations are denied. CBG denies Berkley's characterization of mold at the Project.

28. Admitted that Kynoch Environmental Management ("KEM") and Moldstoppers investigated and remediated mold in residential units in Buildings 1 and 2. As to all remaining allegations in Paragraph 28 with respect to the timing of the work, specific inspection logs, and remediation costs, CBG lacks sufficient information to admit or deny such allegations and demands strict proof thereof.

29.     Whether HP asserted a Pollution Claim within the meaning of the Policy and whether CBG complied with the reporting provisions of the Policy are legal conclusions to which no response is required.  To the extent a response is required, all such allegations are denied.  CBG denies Berkley's characterization of the mold at the Project.

30.     Admitted that HP issued a Stop Work Order via certified letter to CBG on May 7, 2021.  The Stop Work Order speaks for itself, but to the extent Paragraph 30 alleges anything inconsistent with, or that mischaracterizes, the contents of the Stop Work Order, all such allegations are denied.

31.     Admitted that HP sent a certified letter to CBG on May 11, 2021.  The letter speaks for itself, but to the extent Paragraph 31 alleges anything inconsistent with, or that mischaracterizes, the contents of the letter, all such allegations are denied.

32.     HP's May 11, 2021, letter speaks for itself, and therefore no response is required.  To the extent Paragraph 32 alleges anything inconsistent with, or that mischaracterizes, the contents of the letter, all such allegations are denied.

33.     Whether CBG complied with the reporting provisions of the Policy is a legal conclusion to which no response is required.  To the extent a response is required, all such allegations are denied.  CBG denies Berkley's characterization of its communications with HP.

34.     Admitted that KEM prepared a remediation protocol.  To the extent Paragraph 34 alleges anything further regarding the process of preparing or modifying the remediation protocol or any agreements or commitments thereto, the allegations are denied.  Whether CBG complied with any reporting or consent requirements of the Policy is a legal conclusion to which no response is required.  To the extent a response is required, all such allegations are denied.

35.     Admitted that Moldstoppers performed remediation work in Building 2.  As to all remaining allegations in Paragraph 35 with respect to the timing and cost of the work, CBG lacks sufficient information to admit or deny such allegations and demands strict proof thereof.

36.     Whether HP asserted a Pollution Claim within the meaning of the Policy and whether CBG complied with the reporting provisions of the Policy are legal conclusions to which no response is required.  To the extent a response is required, all such allegations are denied.  CBG denies Berkley's characterization of its communications with HP and any remediation costs.

### *CBG and CV Submit A Renewal Application To Berkley*

37.     Admitted that CV sought a renewal of the Policy and submitted documents on behalf of itself and its subsidiaries, including CBG, to Berkley in April 2021.  The documents speak for themselves, but to the extent Paragraph 37 alleges anything inconsistent with, or that mischaracterizes, the submitted documents, all such allegations are denied.  Admitted that CV submitted an executed application for insurance to Berkley dated May 25, 2021.  The application speaks for itself, but to the extent Paragraph 37 alleges anything inconsistent with, or that mischaracterizes, the contents of the application, all such allegations are denied.  CBG also denies Berkley's characterization of CV's efforts.

38.     The application speaks for itself, and therefore no response is required.  To the extent Paragraph 38 alleges anything inconsistent with, or that mischaracterizes, the contents of the application, all such allegations are denied.

39.     The application speaks for itself, and therefore no response is required.  To the extent Paragraph 39 alleges anything inconsistent with, or that mischaracterizes, the contents of the application, all such allegations are denied.

40.     The application speaks for itself, and therefore no response is required.  To the extent Paragraph 40 alleges anything inconsistent with, or that mischaracterizes, the contents of the application, all such allegations are denied.

41.     The application speaks for itself, and therefore no response is required.  To the extent Paragraph 41 alleges anything inconsistent with, or that mischaracterizes, the contents of the application, all such allegations are denied.

42.     Admitted that Berkley issued a renewal policy to CV and CBG with an effective period from June 1, 2021, to June 1, 2022.  Regarding all remaining allegations in Paragraph 42, CBG lacks sufficient information to admit or deny such allegations and demands strict proof thereof.

### *CBG Begins Remediation Work At The Project*

43.     Admitted that KEM was on site at the Project on June 1, 2021.  As to when CBG "mobilized" personnel from KEM and "a remediation contractor" – terms the Complaint does not define – CBG lacks sufficient information to admit or deny the allegations in Paragraph 43 and demands strict proof thereof.

44.     Admitted that KEM was on site at the Project on June 3, 2021.  As to when CBG "mobilized a second team" – terms the Complaint does not define – CBG lacks sufficient information to admit or deny the allegations in Paragraph 44 and demands strict proof thereof.

45.     Admitted that CBG incurred costs for KEM and other remediation contractors. Regarding the timing and amount of costs incurred, CBG lacks sufficient information to admit or deny such allegations in Paragraph 45 and demands strict proof thereof.

46.     Whether HP asserted a Pollution Claim within the meaning of the Policy and whether CBG complied with the reporting provisions of the Policy are legal conclusions to

8

which no response is required.  To the extent a response is required, all such allegations are denied.  CBG denies Berkley's characterization of its communications with HP, remediation costs, and remediation efforts.

*CBG Reports The Mold Issue To Berkley*

47.    Admitted that on June 7, 2021, CBG, through its broker, reported HP's May 7, 2021, Pollution Claim to Berkley.  CBG denies Berkley's characterization of the timing of the notice.  The notice speaks for itself, but to the extent Paragraph 47 alleges anything inconsistent with, or that mischaracterizes, the contents of the notice, all such allegations are denied.

48.    The notice speaks for itself, and therefore no response is required.  To the extent Paragraph 48 alleges anything inconsistent with, or that mischaracterizes, the contents of the notice, all such allegations are denied.

49.    The notice speaks for itself, and therefore no response is required.  To the extent Paragraph 49 alleges anything inconsistent with, or that mischaracterizes, the contents of the notice, all such allegations are denied.

50.    The notice speaks for itself, and therefore no response is required.  To the extent Paragraph 50 alleges anything inconsistent with, or that mischaracterizes, the contents of the notice, all such allegations are denied.

51.    Whether CBG complied with the reporting provisions of the Policy is a legal conclusion to which no response is required.  To the extent a response is required, all such allegations are denied.  Regarding the timing and amount of costs incurred, CBG lacks sufficient information to admit or deny such allegations in Paragraph 51 and demands strict proof thereof.  CBG denies Berkley's characterization of the remediation costs.

52.     Admitted that CBG received an acknowledgment of HP's Pollution Claim and requests for information from John McKinney.  CBG denies Berkley's characterization of the nature of Mr. McKinney's requests and CBG's response.

53.     Admitted that CBG and Mr. McKinney spoke via phone on June 11, 2021.  CBG denies Berkley's characterization of the substance of the phone call.

54.     Admitted that Mr. McKinney sent CBG an email on June 14, 2021.  The email speaks for itself, but to the extent Paragraph 54 alleges anything inconsistent with, or that mischaracterizes, the contents of the email, all such allegations are denied.

55.     Admitted that CBG provided documents to Mr. McKinney on or about June 15, 2021.  The documents speak for themselves, but to the extent Paragraph 55 alleges anything inconsistent with, or that mischaracterizes, the documents provided, all such allegations are denied.  Regarding the remaining allegations in Paragraph 55, CBG lacks sufficient information to admit or deny such allegations and demands strict proof thereof.

56.     Admitted that Mr. McKinney emailed CBG on June 16, 2021.  The email speaks for itself, but to the extent Paragraph 56 alleges anything inconsistent with, or that mischaracterizes, the contents of the email, all such allegations are denied.  CBG denies Berkley's allegation that CBG did not inform Mr. McKinney that it was incurring costs for remediation work at the Project.

57.     Admitted that CBG provided additional information and documents to Berkley via email on June 21, 2021.  The emails and documents speak for themselves, but to the extent Paragraph 57 alleges anything inconsistent with, or that mischaracterizes, the emails or documents provided, all such allegations are denied.  CBG denies Berkley's characterization of the timing of the additional information provided by CBG or its communications with HP.

Regarding Berkley's allegation that it did not have an opportunity to review or approve certain items, CBG lacks sufficient information to admit or deny such allegations in Paragraph 57 and demands strict proof thereof.

58.    Admitted that CBG provided Berkley with information and documents regarding remediation costs via email on June 23, 2021.  The documents speak for themselves, but to the extent Paragraph 58 alleges anything inconsistent with, or that mischaracterizes, the documents provided, all such allegations are denied.

59.    Admitted that Mr. McKinney communicated with CBG via phone and email on June 30, 2021, regarding the status of Berkley's investigation.  Mr. McKinney's email speaks for itself, but to the extent Paragraph 59 alleges anything inconsistent with, or that mischaracterizes, the contents of the email, all such allegations are denied.

60.    Admitted that CBG's broker sent a letter and subsequent email to Berkley on July 8, 2021.  These documents speak for themselves, but to the extent Paragraph 60 alleges anything inconsistent with, or that mischaracterizes, the contents of these documents, all such allegations are denied.

61.    Admitted that Mr. McKinney requested information from CBG's broker in July of 2021.  The emails containing these requests speak for themselves, but to the extent Paragraph 61 alleges anything inconsistent with, or that mischaracterizes, the contents of these emails, all such allegations are denied.  Regarding the nature of CBG's broker's response, CBG lacks sufficient information to admit or deny such allegations in Paragraph 61 and demands strict proof thereof.

62.    Admitted that Berkley formally denied coverage to CBG.  CBG denies that Berkley formally denied coverage by letter dated August 8, 2021—the letter was dated August 11, 2021.  The letter speaks for itself, but to the extent Paragraph 62 alleges anything

inconsistent with, or that mischaracterizes, the content of the letter, all such allegations are denied.

63.    Admitted.

64.    Admitted.

65.    Admitted that CBG is entitled to coverage under the Policy and that it has incurred roughly $6 million in costs related to HP's Pollution Claim.  CBG denies any characterization of CBG's counsel's statements.

66.    Admitted.

## COUNT I
**(Declaratory Judgment That CBG's Failure To Timely Report HP's Claim Bars Coverage)**

67.    CBG incorporates its response to paragraphs 1 through 66 as though fully set forth herein.

68.    The allegations in Paragraph 68 are legal conclusions to which no response is required.  To the extent a response is required, all such allegations are denied.

69.    Denied.

70.    The allegations in Paragraph 70 are legal conclusions to which no response is required.  To the extent a response is required, all such allegations are denied.

71.    The allegations in Paragraph 71 are legal conclusions to which no response is required.  To the extent a response is required, all such allegations are denied.

72.    The allegations in Paragraph 72 are legal conclusions to which no response is required.  To the extent a response is required, all such allegations are denied.

73.    CBG denies that Berkley is entitled to judgment or any relief sought for Count I.

## COUNT II
**(Declaratory Judgment That The Policy's Voluntary Payments Provision Bars Coverage)**

74.     CBG incorporates its response to paragraphs 1 through 73 as though fully set forth herein.

75.     Denied.

76.     Denied.

77.     The allegations in Paragraph 77 are legal conclusions to which no response is required.  To the extent a response is required, all such allegations are denied.

78.     The allegations in Paragraph 78 are legal conclusions to which no response is required.  To the extent a response is required, all such allegations are denied.

79.     CBG denies that Berkley is entitled to judgment or any relief sought for Count II.

## COUNT III
**(Declaratory Judgment That The Policy's Contractual Liability Exclusion Bars Coverage)**

80.     CBG incorporates its response to paragraphs 1 through 79 as though fully set forth herein.

81.     The allegations in Paragraph 81 are legal conclusions to which no response is required.  To the extent a response is required, all such allegations are denied.

82.     The allegations in Paragraph 82 are legal conclusions to which no response is required.  To the extent a response is required, all such allegations are denied.

83.     CBG denies that Berkley is entitled to judgment or any relief sought for Count III.

## GENERAL DENIAL

Any and all allegations not expressly admitted herein are hereby denied, including, but not limited to, all wherefore clauses, prayers, and demands.

## AFFIRMATIVE DEFENSES

This action and any relief sought by Berkley may be barred, in whole or in part, by additional defenses that cannot now be articulated because of the generality of the pleadings, the

13

fact that discovery has not yet been taken, and for additional reasons.  CBG reserves the right to supplement these Affirmative Defenses as pretrial discovery proceeds.  The statement of Affirmative Defenses below is not, and shall not be considered to be, a waiver by CBG of its right to require Berkley to meet its burden of proof as to each element of its claim.  Subject to the foregoing, CBG's defenses are set forth below.

### First Affirmative Defense

84.    Berkley's claim is barred by the terms of the Policy, which obligates Berkley to defend CBG against HP's Pollution Claim and pay on CBG's behalf for all Pollution Loss and Claim Expense for HP's Pollution Claim.

### Second Affirmative Defense

85.    Berkley's claim is barred because CBG has complied with all conditions precedent to coverage, and all premiums due under the Policy have been paid.

### Third Affirmative Defense

86.    Berkley's claim is barred because it has breached the terms of the Policy by failing to pay CBG's Pollution Loss and Claim Expense for HP's Pollution Claim.

### Fourth Affirmative Defense

87.    Berkley's claim is barred to the extent that coverage under the Policy is mandated by any applicable provisions, terms and definitions set forth therein, or by public policy or by express provisions of law.

## AMENDED COUNTERCLAIM

Pursuant to Rules 13 and 15 of the Federal Rules of Civil Procedure, CBG asserts the following Amended Counterclaim.

14

### Introduction

The following counterclaim arises out of Berkley Assurance Company's ("Berkley") bad faith denial of coverage and failure to honor its obligations to CBG Building Company, LLC ("CBG") in connection with mold growth at the Mallard Pointe Project in Charlotte, NC (the "Project"). Berkley issued a policy containing Contractor Pollution Liability coverage to CV Services Group LP ("CV") and CBG, among others, as Named Insureds for the period of June 1, 2020, to June 1, 2021 (the "Policy"). The Policy requires Berkley to pay all Pollution Loss and Claim Expense for any Pollution Claim as defined by the Policy. It is undisputed that mold is a covered Pollution Condition that may form the basis of a Pollution Claim under the Policy.

On May 7, 2021, the Project owner, High Properties, LP (the "Owner"), asserted a Pollution Claim against CBG, about which CBG timely notified Berkley on June 7, 2021. The Berkley adjuster responsible for investigating the claim was initially responsive and reassured CBG that Berkley would not "hold up" CBG's efforts to quickly address the mold issues and prevent additional damage. However, within days, Berkley shifted its position, suddenly expressing "coverage concerns" based on a misreading of the Policy language regarding notice and a baseless accusation that CBG had incurred costs and assumed liability without Berkley's prior written consent, ignoring the Policy's Self-Insured Retention requirement.

Over the next two months, Berkley refused to meaningfully investigate the Claim or engage with its insured, instead propounding numerous document and information requests on CBG in an attempt to find support for its incorrect coverage determination. Then on August 11, 2021, before CBG could even provide the requested documentation, and without visiting the Project site or substantively discussing the Claim with Project personnel, Berkley denied coverage based on the improper application of a non-existent notice condition; a demonstrably

15

false accusation that CBG violated the Policy's Defense, Settlement, and Cooperation provision; and other boilerplate justifications.  When the deficiencies in its reasoning were pointed out by CBG, Berkley stalled for six months before contriving new, baseless grounds for denial and doubling down on its erroneous assertions that CBG improperly assumed liability and provided late notice, though this time under a new theory.

For the next eight months, CBG and its counsel tried to engage with Berkley, submitting substantive correspondence, including a letter dated April 15, 2022; responding to additional information requests; providing documents to support its damages; and requesting meetings between the parties to try to amicably resolve the dispute.  Berkley and its counsel, however, continued to stall and string CBG along while refusing to confirm the existence of coverage. During this time, Berkley repeatedly stated that it would respond to CBG's April 15, 2022, coverage letter—a response that Berkley evidently never intended to send, choosing instead to use the additional information provided to contrive yet a third theory as to how CBG's notice was late.  This new late notice position was not disclosed to CBG until Berkley filed the instant action seeking a declaration that it has no obligation to provide coverage to CBG under the Policy.  All the while, CBG has been forced to bear the entire cost of the Owner's Pollution Claim itself, even though such costs are the obligation of Berkley.

Berkley's wrongful denial of coverage and failure to pay CBG's covered claim based on a blatant misreading of its own Policy language and deliberate ignorance as to the facts underlying the claim is in clear breach of Berkley's Policy obligations, including the implied covenant of good faith and fair dealing.  Accordingly, CBG is entitled to damages and any other such relief as the Court may deem just and proper.

## The Parties

1.      Defendant-Counterclaimant CBG is a limited liability company organized in the state of Virginia.  CBG is a citizen of Virginia, Delaware, Florida, and Georgia.

2.      Upon information and belief, plaintiff Berkley is an insurance company incorporated in the state of Iowa with its principal place of business in Scottsdale, Arizona.

## Jurisdiction

3.      The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter is between citizens of different states and the amount in controversy exceeds $75,000.

4.      The Court also has jurisdiction pursuant to 28 U.S.C. § 1367(a) because it arises out of the same transaction or occurrence that is the subject of Berkley's complaint and is thus within the Court's supplemental jurisdiction.

5.      The Court has personal jurisdiction over Berkley and CBG because they both do business in this District.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events and acts giving rise to this action, including the issuance of the Policy, occurred in this District.

## The Policy

7.      Berkley issued Policy No. PCAB-5011814-0620 to CV and CBG, among others, as Named Insureds for the period of June 1, 2020, to June 1, 2021.  The Policy is attached hereto as Exhibit A.  Ex. A at 2, 17.

8.      The Policy was delivered to CBG at its principal place of business in Arlington, Virginia.

9.      Pursuant to Insuring Agreement C., Berkley agreed to defend CBG against "any Pollution Claim" and pay on CBG's behalf "all Pollution Loss and Claim Expense for that

17

Pollution Claim," so long as: (1) "The Pollution Claim arises out of an actual or alleged Pollution Condition that results from the performance of Contractor Activities by [CBG], or by a Responsible Entity for whom [CBG is] legally responsible"; and (2) The Pollution Claim is for . . . Cleanup Costs for a Pollution Condition that occurs during the Policy Period . . . ." Ex. A at 39.

10.    "Pollution Claim" is defined as "the assertion of a legal right alleging liability or responsibility on your part . . . for Pollution Loss arising out of a Pollution Condition resulting from otherwise insured Contractor Activities." Ex. A at 48. "Pollution Claim" is included in the Policy's definition of "Claim." Ex. A at 43.

11.    "Pollution Loss" is defined as "any amounts you are legally obligated to pay for . . . Cleanup Costs." Ex. A at 48.

12.    "Cleanup Costs" are defined as "costs for the . . . clean up, abatement, containment, capping, remediation, or correction of a Pollution Condition resulting from the performance of Contractor Activities." Ex. A at 43.

13.    "Pollution Condition" is defined, in relevant part, as "the actual or alleged . . . growth . . . of . . . mold, mildew, spores, fungi, microbes, [or] bacteria . . . into or upon land, any structure on land, [or] the indoor or outdoor atmosphere . . . ." Ex. A at 48.

14.    "Contractor Activities" are defined, in relevant part, as "any general construction, construction management, or environmental activity . . . ." Ex. A at 44.

15.    "Responsible Entity" is defined as "those . . . entities, retained by you or on your behalf, rendering Professional Services or Contractor Activities." Ex. A at 49.

16.    In sum, coverage under the Policy is triggered and Berkley must pay CBG's Cleanup Costs where: (1) a Pollution Claim is alleged against CBG; (2) the Pollution Claim

arises out of mold growth resulting from any general construction; and (3) the Pollution Claim is for Cleanup Costs incurred to remediate mold growth that first occurred during the policy period.

## The Project and Discovery of Mold

17.     On September 25, 2019, the Owner contracted with CBG to serve as general contractor for the Project, which consists of three multi-family residential buildings in the greater Charlotte, NC area.

18.     On January 20, 2020, CBG subcontracted with G & P Contractors ("G&P") to install gypsum concrete ("gypcrete") throughout the Project.  G&P began installing gypcrete at the Project in November 2020.

19.     CBG also retained Kynoch Environmental Management ("KEM") to perform monthly inspections of the Project during the normal course of construction.  KEM began its routine inspections of the Project in July 2020.

20.     On or about April 9, 2021, mold growth was observed by KEM in several units in Building 2 related to G&P's installation of gypcrete.

21.     CBG coordinated with KEM and the Owner to address the gypcrete-related mold and hired a third-party vendor, Moldstoppers, LLC ("Moldstoppers"), to investigate the mold and carry out any necessary remediation to prevent the problem from worsening.

22.     On May 7, 2021, the Owner made a Pollution Claim against CBG via certified letter issuing a Stop-Work Order for the interior of Building 2 (the "Stop-Work Order").  The Stop-Work Order asserted that CBG was contractually responsible for promptly and fully investigating and remediating all mold within the building.  Specifically, the Owner stated that "no additional work shall take place" inside Building 2 until the Owner and CBG developed a

mold remediation documentation and certification plan.  The Stop-Work Order is attached hereto as Exhibit B.

23.     On May 11, 2021, the Owner sent CBG a second certified letter permitting certain work to continue in Building 2 and outlining a twelve-step investigation and remediation plan that the Owner required CBG to "commence immediately to mitigate any delay in construction."

24.     Facing pressure from the Owner to quickly address the mold growth and avoid delays to the schedule, CBG continued its investigation and development of a comprehensive remediation protocol.

25.     On May 18, 2021, the Owner directed exploratory demolition of ten units across Floors 2-4 of Building 2 to investigate the extent of the mold growth.  KEM and Moldstoppers conducted this investigation and provided an Inspection Log indicating that mold growth was present in every inspected unit.

26.     Between May 26 and May 28, 2021, KEM inspected 30 additional units in Building 2 and confirmed widespread mold growth.  Only then did CBG become alerted to the extent of the mold issue and learn that remediation costs would be significant.

27.     On June 3, 2021, mold growth was also discovered in Building 1 where gypcrete had been poured and isolation strips were not installed.

28.     On June 14, 2021, mold growth was also discovered in Building 3 on floors where gypcrete was poured.

29.     In a letter dated June 21, 2021, KEM concluded that the cause of this mold growth was G&P's failure to install "isolation strips" prior to pouring gypcrete in areas of the Project where carpeting was to be installed.  This allowed moisture from the gypcrete to wick up into the Project's drywall, which was the "triggering event" for mold growth.

30.     Remediation of all three buildings has since been completed at a total cost exceeding $6 million.

## CBG Notifies Berkley of the Owner's Pollution Claim

31.     Within days of receiving the results of KEM's investigation and confirmation that mold growth was widespread, CBG provided timely notice of the Owner's May 7 Pollution Claim to its broker, USI Insurance Services ("USI"), on Friday, June 4, 2021, who then tendered the Pollution Claim to Berkley on Monday, June 7, 2021.

32.     John McKinney, a Senior Claims Examiner for Berkley, spoke with CBG via phone on Friday, June 11, 2021, and requested various documents from CBG to assess coverage. During this call, Mr. McKinney was informed that time was of the essence and CBG needed to proceed with repairs.  Mr. McKinney responded that Berkley was not going to "hold [CBG] up."

33.     On Monday, June 14, 2021, CBG provided additional information and documents to Berkley for review.  Because Berkley had not set up a system for document collection, CBG provided these documents through several methods, including via email attachments, Dropbox links, and a shared drive set up by CBG's broker.

34.     Upon reviewing the documents, Mr. McKinney advised CBG on June 15, 2021, that because the May 7 Stop-Work Order "requested that [CBG] develop a mold remediation and certification plan . . . this would be a claim."

35.     On June 16, 2021, Mr. McKinney sent an email to CBG again confirming that Berkley had "no intent to hold up [CBG] as this was a demand from the Owner in its certified letters of May 7 and May 11 that [CBG] retain an environmental consultant to assess and remediate all units affected with mold before [CBG] could continue further work."

Mr. McKinney further requested that CBG "keep [him] updated on any costs going forward" and indicated that Berkley "might want to have [its] causation consultant review the matter."

36.     Despite Mr. McKinney's statements and the fact that Berkley was aware that remediation was ongoing at the Project, Berkley never sent anyone to the Project site to assess the damage, investigate the cause or instances of mold, or discuss the issues with CBG's environmental consultant.

37.     On June 23, 2021, Mr. McKinney sent another email to CBG acknowledging that "this matter was the result of the Owner's May 7 Stop Work letter . . . requiring that [CBG] retain an environmental consultant to develop a mold remediation documentation and certification plan that is agreed upon by the Owner."  Mr. McKinney also stated that he would be "hiring a consultant to provide insight into the remediation" and inquired as to who the consultant should contact at CBG.  CBG responded with the requested contact information that same day.

38.     Despite Mr. McKinney's statements in his June 23, 2021, email, and CBG's provision of contact persons, Berkley never sent anyone to the Project site or reached out to Project personnel to discuss the remediation efforts.

### Berkley Improperly Denies Coverage

39.     Having still not received an official acceptance of coverage, CBG followed up with Mr. McKinney via email on June 30, 2021, to confirm whether there was anything "further that [Berkley] need[ed] from [CBG] to move this case along."

40.     That same day, Mr. McKinney responded via phone and email again acknowledging that "a claim was made by the Owner in its certified 'Stop work' letter of May 7, 2021," but that coverage was still under investigation.

41.     In that same June 30, 2021, email, Mr. McKinney also raised for the first time Berkley's incorrect "coverage concern" that CBG's notice to Berkley was late because CBG "knew of the mold issue at the latest April 15, 2021" but did not provide notice until after the Policy expired on June 1, 2021.  This argument is based on an erroneous reading of the Policy, which does not require Pollution Claims to be reported during the Policy Period.  *See* Ex. A at 53.  In this email, Mr. McKinney did *not* assert that CBG's notice was late because it was not provided "as soon as reasonably possible" as required by the Policy.  *Id.*

42.     Mr. McKinney further asserted in his June 30 email that CBG "appear[ed] to be [in] violation of the Defense, Settlement and Cooperation Provision of the Policy, in [that] the Insured's incurred costs and assumed liability in agreeing to the Owner's mold remediation protocol without Berkley's prior written consent."  In making this assertion, however, Mr. McKinney failed to acknowledge his earlier assurances that Berkley would not "hold [CBG] up."

43.     On July 8, 2021, USI sent Berkley a letter providing additional information and requesting that Berkley cover costs incurred by CBG for the Owner's Pollution Claim as required by the Policy.

44.     On July 15, 2021, Mr. McKinney spoke with USI via phone and email and requested additional documents.  Mr. McKinney advised that "**after [he] review[ed] this information**, [he would] be in a position to respond to [USI's] letter and finalize [Berkley's] coverage position."

45.     On August 11, 2021, CBG advised Berkley via email that it was nearly finished collecting the requested documents and was preparing a production.  Nevertheless, *without* reviewing the additional information, Berkley formally denied coverage later that day.

46.    In its denial letter, Berkley again erroneously asserted that CBG's notice was late because it was not provided until after the Policy had expired.  It also claimed for the first time that CBG's notice was late because it was not provided "as soon as practicable" – misquoting the Policy's notice requirement ("as soon as reasonably possible") in the process.

47.    In addition to its incorrect assertion that CBG's notice was late, Berkley also identified a number of other baseless grounds as pretexts for its denial. These included CBG's purported lack of cooperation in Berkley's non-existent "investigation," and CBG's alleged failure to disclose the Owner's Pollution Claim on its application for a *different policy* than the one under which CBG seeks coverage.  Berkley further reiterated the untenable position that CBG's payment of costs within the Policy's Self-Insured Retention – costs that must be paid by CBG before coverage under the Policy is triggered – constituted an assumption of liability without Berkley's consent and thus permitted Berkley to deny CBG coverage for the entirety of its claim.

**Post-Denial Communications with Berkley**

48.    On August 31, 2021, USI sent Berkley a letter that responded to Berkley's denial, made clear that CBG's claim was covered, and asserted that CBG had complied with the Policy's terms and conditions.  USI also submitted additional documents supporting CBG's claim.

49.    Berkley did not respond to CBG or USI for over four months until a phone call in early 2022.  On February 15, 2022, Berkley sent CBG a letter reaffirming its coverage denial, again asserting late notice under the wrong, "as soon as practicable" standard.

50.    On April 15, 2022, counsel for CBG sent a letter to Berkley requesting that Berkley withdraw its coverage denial and honor its contractual and legal obligations to CBG.

51.     Instead of providing a written response to CBG's April 15 letter, counsel for Berkley emailed CBG's counsel requesting additional cost documentation for CBG's claim on May 24, 2022.  In a call the following day, Berkley's counsel also requested that CBG produce additional invoices and reports prepared by KEM during its inspections.  CBG promptly collected the requested documentation and provided it to Berkley on August 10, 2022.

52.     On August 31, 2022, CBG's counsel requested an update regarding the status of Berkley's response to CBG's April 15 letter.  Berkley's counsel responded on September 6, 2022, that Berkley would be "responding shortly."

53.     Counsel for CBG and Berkley continued to communicate regarding the Pollution Claim.  During these communications, Berkley made repeated representations that it was preparing a response to CBG's April 15 letter.  On September 27, 2022; October 12, 2022; October 17, 2022; and October 25, 2022, CBG's counsel inquired as to the status of Berkley's forthcoming response.

54.     Instead of providing a response to CBG's letter, however, Berkley filed the Complaint in this action on October 26, 2022 – six months after receiving CBG's April 15 letter.

## <u>COUNT I: BREACH OF CONTRACT</u>

55.     CBG incorporates and realleges the allegations stated in the preceding paragraphs as if fully set forth herein.

56.     Berkley breached the Policy by (i) failing in good faith to pay damages covered by the Policy, and (ii) failing to make a reasonable investigation of the facts and circumstances underlying CBG's claim, all in violation of the implied covenant of good faith and fair dealing under the Policy.

<u>Berkley Breached the Policy by Failing to Pay for Covered Damages</u>

57.     The Policy is a written contract of insurance, and Berkley has a duty under the Policy to provide coverage to CBG with respect to the Owner's Pollution Claim, which includes the obligation to reimburse Cleanup Costs in connection therewith.

58.     Berkley breached its contractual obligations under the Policy by denying any obligation to provide coverage to CBG with respect to the Owner's Pollution Claim and refusing to reimburse Cleanup Costs in connection therewith.

59.     As a direct and proximate result of Berkley's breach of its contractual obligations under the Policy, CBG has suffered damages in excess of $75,000 – the exact amount to be proven at trial.

<u>Berkley's Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

60.     Berkley also breached the Policy's implied covenant of good faith and fair dealing by failing to make a reasonable investigation of the facts and circumstances underlying CBG's claim, failing to correctly read its own Policy,  denying coverage to CBG on the basis of language that does not exist in the Policy, and otherwise acting in bad faith in the handling of CBG's claim.

61.     Implied in the Policy is the covenant of good faith and fair dealing.

62.     The implied covenant of good faith and fair dealing requires insurers to adequately investigate claims, to settle promptly and fairly those claims that are covered, and to proceed generally in good faith, particularly where continued delay exposes the insured to additional damage.  The hallmark of good faith is an insurer's obligation to put its insured's interests ahead of its own.

63.    Berkley had a duty to immediately conduct an adequate investigation of the circumstances surrounding the Owner's Pollution Claim, act in good faith in evaluating CBG's claim, and promptly pay CBG for Cleanup Costs incurred in connection with the Owner's Pollution Claim.

64.    Instead, Berkley failed to conduct a reasonable investigation of the facts and circumstances underlying the Owner's Pollution Claim; performed only a perfunctory review of its own Policy and the documents provided to it before denying coverage; stalled for months in responding to CBG's requests for reconsideration; and otherwise put its own interests ahead of CBG's.

65.    Examples of Berkley's breach of the implied covenant of good faith and fair dealing include, but are not limited to:

a.    Failing to send an adjuster or consultant to the Project site or meet with any Project personnel to discuss the Pollution Condition or necessary remediation, despite being given the opportunity to do so by CBG; repeatedly stating that it would send persons to the site; and being informed by CBG that time was of the essence;

b.    Failing to conduct a good faith review of the Pollution Claim such that Berkley initially denied coverage by improperly relying on a notice requirement that clearly does not apply to Pollution Claims, and then later denied coverage for late notice by continually misquoting its own Policy language, and other demonstrably false reasons;

c.    Stating that additional documents from CBG were required before it could provide a coverage position, then suddenly denying coverage the same day the documents were provided without so much as a cursory review;

27

d. Failing to respond to CBG's April 15, 2022, letter requesting that Berkley withdraw its coverage denial, despite repeatedly stating that it would respond, having months to do so, and being provided with additional documentation as requested; and,

e. Compelling CBG to defensively respond to this litigation by seeking declaratory judgment rather than engaging with its insured to discuss the claim or paying the amounts due under the Policy.

66. Berkley's inadequate claims handling procedures, its juggling between outright denying coverage while also demanding additional information and documentation, and its failure to reasonably investigate the facts and circumstances of the Owner's Pollution Claim, demonstrate a clear intent by Berkley to deny coverage through whatever means necessary and ask questions later. This pattern of conduct constitutes a clear breach of the implied covenant of good faith and fair dealing.

67. As a result of Berkley's conduct, including its intentional and wanton refusal to comply with its Policy, the law, and its duty of good faith and fair dealing, CBG has and continues to suffer harm. CBG therefore seeks damages from Berkley for breach of its contractual obligations in an amount that will fully compensate CBG for the harm caused by Berkley's breach, including an award of Cleanup Costs incurred in connection with the Owner's Pollution Claim.

68. These damages were foreseeable to Berkley at the time the Policy was purchased, prepared, and delivered to CBG and known when Berkley engaged in its intentionally wrongful conduct.

69. Virginia Code § 38.2-209 provides in pertinent part that:

Notwithstanding any provision of law to the contrary, in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under

his present policy . . . or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award.  However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy. "Individual," as used in this section, shall mean and include any person, group, business, company, organization, receiver, trustee, security, corporation, partnership, associate, or governmental body, and this definition is declaratory of existing policy.

70.    Accordingly, in the event that CBG establishes that Berkley breached its duty under the Policy to provide coverage to CBG and that Berkley failed to act in good faith, CBG is also entitled to recover, and hereby seeks, damages from Berkley in the amount of the costs and expenses, including attorneys' fees, CBG was forced to incur to establish Berkley's obligation to provide coverage with respect to the Owner's Pollution Claim.

## PRAYER FOR RELIEF

WHEREFORE, CBG respectfully requests the following:

1.    Damages from Berkley for its breach of its contractual obligations under the Policy that will fully compensate CBG for the harm caused by Berkley's breach, including an award of the amount of Cleanup Costs paid by CBG in connection with the Owner's Pollution Claim and an award of the costs, including attorneys' fees and expenses, incurred by CBG in efforts to obtain reimbursement of Cleanup Costs from Berkley, including costs incurred in this action, and pre-judgment interest as allowed by law; and

2.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

CBG hereby demands a trial by jury of all issues triable as of right by jury in Berkley's Complaint and CBG's Amended Counterclaim.

29

Dated: January 4, 2023

Respectfully submitted,

*/s/ Eric M. Gold*
Eric M. Gold (VSB No. 78515)
Alex J. Lathrop (VSB No. 44277)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Phone: 202.663.8476
Fax:    202.663.8007
Email: eric.gold@pillsburylaw.com
Email: alex.lathrop@pillsburylaw.com

*Counsel for CBG Building Company, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on January 4, 2023, via the Court's electronic filing system on counsel for all parties.

Respectfully submitted,

*/s/ Eric M. Gold*

Eric M. Gold (VSB No. 78515)
Alex J. Lathrop (VSB No. 44277)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Phone: 202.663.8476
Fax:    202.663.8007
Email: eric.gold@pillsburylaw.com
Email: alex.lathrop@pillsburylaw.com

*Counsel for CBG Building Company, LLC*

31